IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ZERO DOWN SUPPLY CHAIN SOLUTIONS, INC., a Florida Corporation; ZERO DOWN SUPPLY CHAIN SOLUTIONS, LLC, a Utah Limited Liability Company; ZERODOWNCONSULTING.COM, and BRAD MCBRIDE, an Individual,<br><br>Plaintiffs,<br>v.<br><br>GLOBAL TRANSPORTATION SOLUTIONS, INC., a Utah Corporation; RFQ WORLD, INC., a Utah Corporation; RKC DEVELOPMENT, L.C., a Limited Liability Company; GLOBAL TRANSPORTATION MANAGEMENT SOLUTIONS, INC., a Utah Corporation; SHAWN SHAW, an Individual; PAT CULLINANE, an Individual; THAD HADERLIE, an Individual; and DATAKAB, L.C., a Utah Limited Liability Company,<br><br>Defendants. | MEMORANDUM, DECISION, & ORDER<br><br>Case No. 2:07-cv-00400-TC-DBP<br><br>District Judge Tena Campbell<br><br>U.S. Magistrate Judge Dustin Pead |

Plaintiffs in this matter are collectively known as "ZeroDown," and consist of Zero Down entities and their founder Dan McBride. Defendants relevant for the purpose of this decision are known as the "Shaw Defendants," and consist of Global Transportation Solutions ("GTS"), Shawn Shaw – the sole shareholder of GTS, and Global Transportation Management Soluctions, LLC ("GTMS").

Before the Court are: (1) Defendants' motion for an order defining the scope and schedule of post-default discovery related to damages (Docket 487); and (2) Plaintiffs' motion to file a sur-reply to Defendants' discovery motion. (Docket No. 492).

## I. DEFENDANT'S MOTION FOR DISCOVERY

Defendants filed a Rule 16 motion for discovery to "move the Court for an Order establishing the scope and schedule of all remaining discovery in this action." (Docket No. 487).

The general scope of discovery is governed by Fed. R. Civ. P 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "[T]he scope of discovery under the federal rules is broad and . . . 'discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'" *Gomez v. Martinez Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In this case, Defendants concede the default against them establishes liability, but seek to conduct discovery about damage causation, mitigation of damages, and off-set of damages.

## A. Causation of Damages

Defendants want to conduct discovery to establish that Plaintiffs' "damages . . . result, at least in part, from causes other than those alleged." (Docket No. 488). In support of their discovery request, Defendants primarily rely on *Trans World Airlines, Inc. v. Hughes, et al.*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds in Hughes Tool Company v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973). In that case, the Second Circuit found "a default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability" but "it was incumbent

upon [the plaintiff] to introduce evidence showing the **extent of the damages** which resulted from the [ ] violations established by the default judgment." 449 F.2d at 69 (emphasis added).

The Second Circuit noted "[t]he outer bounds of the recovery allowable are . . . measured by the principle of proximate cause," and that the plaintiff could not recover "any losses it had ever suffered from whatever source," but only "those damages arising from the acts and injuries pleaded." The court reiterated that the plaintiff did *not* have to show the defendant's acts "caused the well-pleaded injuries," but only had to show the "extent of the injury caused [ ] in **dollars and cents**." *Id.* at 70 (emphasis added).

Plaintiffs oppose Defendants' motion to conduct discovery on damage causation. (Docket No. 489). They astutely point out the Second Circuit limited Defendants' broad reading of *Hughes*. In *Greyhound Exh. Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992), the court dealt with a situation in which a defaulting defendant relied on *Hughes* to introduce mitigation of damages evidence related to comparative negligence and off-set. 973 F.2d at 158. The Second Circuit surmised that the defendant in that case "read[ ] our statement in *Hughes* to mean that default or not, a plaintiff must show that the actions of the defendant were the proximate cause of the damages claimed." *Id.* at 159. The Court stated "**We think that [the defendant] read *Hughes* too broadly**." *Id.* (emphasis added). As such, the court denied the defendant's request to offer evidence of comparative negligence "under the guise of damage mitigation" because such evidence "effectively contest[ed] settled issues of liability." *Id.*

Rather, the court emphasized "[t]here is a categorical distinction between the element 'proximate cause,' as it pertains to the assignment of liability . . . and **'proximate cause' as it relates to the ministerial calculation of damages** in the context of a default judgment." *Id.* (emphasis added). The court stated the concept of proximate cause employed in *Hughes* "was

merely used to set the limits of recovery according to the injuries that were conceded by default." *Id.* That is, "in the *Hughes* context, the application of proximate cause presumes that liability has been established, and requires only that **the compensation sought relate to the damages that naturally flow from the injuries pleaded**." *Id. See also Wehrs v. Wells*, 688 F.3d 866, 892-93 (7th Cir. 2012) (rejecting a broad reading of *Hughes*, and refusing to allow a defaulting defendant to offer mitigation evidence in a damages setting).

In sum, after careful consideration of the parties' arguments, the Court finds that Defendants, who defaulted, cannot seek discovery about the underlying cause of Plaintiffs' damages. Therefore, this portion of Defendants' motion is denied. Defendants shall be limited to conducting discovery about the extent, i.e., the amount of damages Plaintiffs claim, and whether such an amount naturally flows from the complaint allegations conceded by Defendants upon their default.

**B. Mitigation/Off-Set**

Defendants seek to conduct discovery to show Plaintiffs failed to mitigate their damages, and that any damages should be off-set by amounts Plaintiffs otherwise owe Defendants. (Docket No. 489). Defendants correctly assert that in *Greyhound*, the Second Circuit ruled that a defaulting defendant had a right "to contest the actual compensatory amount claimed with respect to any particular item of damages," including "proof of mitigation of damages" as long as such mitigation evidence "concerned damages rather than liability." 973 F.2d at 160-61.

However, in their opposition, Plaintiffs correctly note that, unlike the situation in *Greyhound*, this Court struck Defendants' answer ( No. 465), and dismissed Defendants' counterclaims regarding Plaintiffs' failure to mitigate and Defendants' off-set, with prejudice and on the merits. (Docket Nos. 92, 239, 281, 290). Plaintiffs also point to *Wehrs*, where the Seventh

Circuit rejected a defaulting defendant's mitigation evidence in a damages setting because "the duty to mitigate damages is an affirmative defense" the defendant "waived his right to . . . by not filing a responsive pleading to the complaint." 688 F.3d 866, 893.

After considering the arguments and case law on this issue, the Court concludes Defendants cannot conduct discovery about Plaintiffs' failure to mitigate, or off-sets owed to Defendants, including off-sets owed from an alleged pre-existing state court action Defendants have against Plaintiffs. (Docket No. 494).   This Court previously dismissed these issues as counterclaims, on the merits and with prejudice.   Therefore, this portion of Defendants' motion is also denied.1

## II. PLAINTIFFS' MOTION TO FILE SUR-REPLY

Plaintiffs seek to file a sur-reply to Defendants' reply to Defendants' motion for discovery because Defendants, for the first time in their reply to their motion for discovery, claimed to have a pre-existing state court action against Plaintiffs. (Docket Nos. 492, 496). Because the Court denies Defendants' motion for discovery as to off-set, the Court denies Plaintiffs' motion to file a sur-reply as unnecessary.

## III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED:**

---

1 The Court does not address off-set in so far as it relates to Defendants' motion for attorney's fees arising from the dismissal of Plaintiffs' RICO claims. (Docket No. 467). This will be addressed in a separate order.

1. Defendants' motion for discovery is **DENIED**, as detailed above. Defendants cannot conduct discovery on causation of damages to prove Plaintiffs' damages resulted from causes other than those alleged in Plaintiffs' complaint. Likewise, Defendants cannot conduct discovery on Plaintiffs' failure to mitigate damages. Defendants cannot conduct discovery about their right to off-set, in so far as this discovery relates to Defendants' previously stricken answer, previously dismissed counterclaims, allegations Defendants conceded by their default, or any alleged pre-existing state actions Defendants have against Plaintiffs.

2. Plaintiffs' motion to file a sur-reply is **DENIED**.

    **IT IS FURTHER ORDERED** that the parties comply with the following discovery SCHEDULING ORDER:

3. All discovery in the post-default damages setting is limited to discovery about the amount of Plaintiffs' damages, and whether such an amount naturally flows from the allegations Defendants conceded in Plaintiffs' complaint.

4. Within **twenty-one (21) days** of this order, Defendants are ordered to comply with their pre-existing discovery obligations by providing Plaintiffs:

    a. Electronic copies of GTMS's financial records from 2006 to the present, including copies of GTMS and GTS's Quickbooks or other accounting software.

    b. The amount of money Shaw/GTS has received from RKC, Haderlie, GTMS, or any entity controlled by them.

    c. The amount of money Shaw/GTS has received from any of the Defendants.

    d. The date, amount, and reason for payments received by Shaw/GTS/GTMS from Zero Down's existing and prospective business relationships including Close to My

      Heart, Basic Research, Atto Solutions, Thales Navigation (a.k.a. Magellan), Cost Recovery Solutions, Sportsman's Warehouse, Backcountry.com, Modus Media, Merit Medical, Unicity, Hoyt USA, Huish Detergents, Overstock.com, Back to Basics, 4Life Research, the Church of Jesus Christ of Latter Day Saints, Lake City Companies, Neways International, WDI, BD Medical, Provo Craft, Sorenson Medical, Melaleuca, MPC Computers, Norgren, and Nature's Way.

e. Shaw, GTS, and GTMS's tax returns from 2006 to the present.

f. All documents, including without limitation bank records, checks, receipts, and invoices, which reflect any payment by Zero Down, the Defendants, or any current, former, or prospective Zero Down customer or business partner, including without limitation the following, from March 2006 to the present: Close to My Heart, Basic Research, Atto Solutions, Thales Navigation (a.k.a. Magellan), Cost Recovery Solutions,Sportsman's Warehouse, Backcountry.com, Modus Media or Modus Link, Merit Medical, Unicity, Hoyt USA, Huish Detergents, Overstock.com, Back to Basics, 4Life Research, the Church of Jesus Christ of Latter Day Saints, Lake City Companies, Neways International, WDI, BD Medical, Provo Craft, Sorenson Medical, Melaleuca, MPC Computers, Norgren, TTI, Nokia, or Nature's Way.

g. The existence, date, and nature of each of GTMS's customers from 2006 to the present.

h. The date, amount, and purpose of, all amounts received from Zero Down, directly or indirectly, from January 2006 to May 2006, including without limitation any amounts paid on any credit account belonging to GTMS by funds belonging to Zero Down.

5. Upon Defendants' compliance with their aforementioned discovery obligations, but still within **twenty-one (21) days** of this order, Plaintiffs must allow Defendants to depose Plaintiffs' damages expert.

6. Upon Defendants' compliance with their aforementioned discovery obligations, but still within **twenty-one (21) days** of this order, Defendants may conduct any other damages discovery within the limitations of the framework set forth above.

DATED this 16 day of October 2012.

_____
Dustin Pead
U.S. Magistrate Judge